## Case No. 14,027.

### TIERNAN v. WOODRUFF.

[5 McLean, 135.] [1]

Circuit Court, D. Michigan. June Term, 1850.

PLEADING AT LAW — AMENDMENT — MOTION TO STRIKE OUT—NEW CAUSE OF ACTION.

1. Amendments are granted to promote justice. In this respect the powers of the court are adequate, and they are liberally exercised.

[Cited in brief in Lycoming Fire Ins. Co. v. Billings, 61 Vt. 310, 17 Atl. 715; Chicago

---

[1] [Reported by Hon. John McLean, Circuit Justice.]

Planing Mill Co. v. Merchants' Nat. Bank, 97 Ill. 298. Cited in Adams v. Main, 3 Ind. App. 240, 29 N. E. 792.]

2. It is not a sufficient cause to strike out an amendment, because it introduces a new cause of action, embraced by the suit.

[Cited in U. S. v. One Hundred and Twenty-Three Casks Distilled Spirits, Case No. 15,-943; Tilton v. Cofield, 93 U. S. 166; U. S. v. Seventy-Six Thousand One Hundred and Twenty-Five Cigars, 18 Fed. 150; Chamberlain v. Mensing, 51 Fed. 511.]

[This was an action of assumpsit by Tiernan's executors against James Woodruff.]

Mr. Hand, for plaintiff.
Mr. Frazer, for defendant.

WILKINS, District Judge. The action in this case was commenced at June term, 1847, and the declaration filed on the 2d of August following. The defendant having plead in abatement, his plea was demurred to, and judgment sustaining the demurrer, and ordering defendant to answer over, was entered on the 5th of September, 1848, being in the June term of that year. At the same time, leave was given to the plaintiff to amend his declaration, and, by a subsequent record entry of the 22d of January, 1849, it appears that an amended narr. was filed. The motion now under consideration is to strike the amended declaration from the files; or that the new count be struck out, because it contains a new substantive cause of action not counted on in the original declaration.

The only declaration now on the files, contains three special counts, and the usual money counts in the following order: First. A special count setting forth a promissory note for $800, dated 24th June, 1841, and payable in 12 months. Secondly. Another special count on another promissory note of the same date with the former, for $2,500, payable in 3 years. Then follow the counts for money lent and advanced to defendant; for money paid out and expended for the use of the defendant; for money had and received for the use of the defendant; and then, that defendant had accounted, and a balance in arrear was found to be due by him to the testator, which he had promised and neglected to pay. After this, on another sheet of paper, which was appended to that containing the prior counts, is a 3d special count on another promissory note for the sum of $2,500, of the same date with the two first notes, and of the same character as to parties, but payable in two years after its date. Rule No. 39 of the rules governing the practice of this court, is not applicable to the determination of the question now raised, inasmuch as leave was obtained by the special order of the court, and that rule only applies to amendments of course, and at any time, in or out of term, under its specified restrictions. But the plaintiff's counsel in resisting this motion, contends that the defendant has not laid a proper foundation, forasmuch as it is not made to appear what amendments have been made, and that the court cannot determine from inspection, which of the counts is the amended count.

The declaration on file has two clerical indorsements; the first is August the 2nd, 1847, stating in general terms that the paper was then placed on file, and the other, in the following language: "Amended narr., filed January 22nd, 1849," which circumstance, connected with the order in which the counts are arranged, clearly shows, and enables the court to determine, that the last special count was the amended count, attached by the counsel to the original declaration.

It is urged by the defendant in support of his motion to strike out this last count, that it is not competent, by way of amendment, to introduce a new substantive cause of action. Before considering this objection, let us look at the facts presented by the record. The plaintiff originally declared in assumpsit on two promissory notes, drawn by Theodore Romeyn for different amounts, maturing at different periods, and added the usual money counts, answering a general indebtment by the defendant. He plead in abatement, and plaintiff demurring thereto, no further action was had until after judgment on demurrer. On the rendition of that judgment, the plaintiff applied to the court and obtained permission to amend his declaration. This was on the 5th of September, 1848, the June term being still in session, and only one term having elapsed since the commencement of the suit. The discussion of the demurrer disclosed no error of form, to be rectified by amendment, the plea demurred to, being in substance to the writ; and the plaintiff did not amend as to matter of form, but superadded the last count, setting forth another promissory note, of the same date with the others, being between the same parties, and evidently part of the same original transaction and indebtment. The last note maturing two years after date, was consequently within the statute of limitations at the time, when leave was obtained to amend, and when the amended narr. was filed.

The summary of these facts, thus presented by the record, is this: An indebtment on the part of the defendant in June, 1841, to the testator of the plaintiff, in the amount of these three notes, for which they were then given, payable at 1, 2, and 3 years; the institution of suit in this court on the first and last notes at June term, 1847; the 2d note from some cause not presented by the files, omitted in the declaration of the plaintiff, and, that subsequently, on leave obtained before the lapse of two terms; the 2d note maturing at two years, is introduced by a new count into the declaration, as part of the plaintiff's original cause of action; that, at the time the said leave was obtained, a separate suit could have been brought on this 2d note, but that now, if this motion suc-

ceeds, the note is outlawed. Best, Chief Justice, observes, in Taylor v. Lyon, 5 Bing. 333, that "questions for amendment, are questions for the discussion of the court, which, on such occasions is to be exercised as to do justice between the parties." And, Park, Justice, in the same case, says: "Amendments are now generally allowed at every stage of the pleadings for the advancement of justice. The question usually is: 'Will any injustice be done by what is proposed?' and, if not, the amendment is allowed." This is nothing more and nothing less in principle, than what was ruled more than a century before, in Bearecroft v. Hundreds of Burnham & Stone, 3 Lev. 347; and Executors of Duke of Marlborough v. Widmore, 2 Strange, 890. Had not the amendments been allowed as proposed in these cases, the statute of limitations would have operated as a bar. and manifest injustice would have been done the plaintiffs. In the first case, the plaintiff's servant had been robbed, and an amendment was permitted, after issue joined, and the trial ready at bar, changing the form of the action and the character of the fact on which it was based, as the prior proceeding was for the robbery, and on the oath of the master. The case in Strange originally averred a promise to the testator in his life time, which was barred, and the declaration was amended by a new count laying the promise to have been made to the executors since his decease. But the principle governing both cases, is that contained in Taylor v. Lyon: Will the proposed amendment work injustice? If not, it should be allowed. In Aylwin v. Todd, 27 E. C. L. 591, the original action was in covenant on a charter party. The breach assigned was, that the defendant had failed to pay the sum agreed upon, notwithstanding the plaintiff had performed his part of the agreement. The plea was non est factum, denying the covenant. After the lapse of several years, (the proceedings at law having been enjoined in chancery by defendant,) the plaintiff was permitted to amend the original declaration by substituting therefor an entirely new count, changing the form of action, declaring for freight, and not upon the covenants of the charter party. The court placing its judgment on the ground of the peculiar circumstances of the case, and allowing the defendant to plead de novo.

These cases show the extent to which the English courts have gone. and the principle by which they have been guided, namely, to prevent injustice being done to either party, by allowing or refusing amendments; that they considered the power discretionary with the court, and to be exercised according to the peculiar circumstances of each case. Tidd, in his elementary treatise, collating the cases, seems to lay down the rule, that a new count should not be added after the 2d term, because, by the prevailing practice in the English courts of common law, the plaintiff was compelled to declare before the end of the 2d term, or else be non-suited. And this rule of practice was not permitted to apply to that class of amendments which merely varied the manner of stating the cause of action, but was confined to new counts for a different or a new substantive cause of action. 2 Tidd. Prac. 754. The opinion of Lord Kenyon in the case of Maddoc v. Hammet, 7 Term R. 55, referred to by Mr. Justice Whipple in 1 Doug. 444, does not modify the rule, or question the discretionary power of the court, but places the amendment on the ground that in the penal action for usury, a new substantive cause of action would not be permitted to be introduced by way of amendment.

The most reliable American cases seem to me to consider amendments at any stage within the discretion of the court, and to be governed by the same principle of doing justice, even to the extent of permitting a new cause of action to be introduced after plea by the addition of a new count to the declaration. The rule is so declared in 1 Dunl. 294, which cites 2 Johns. 206, in which the amendment proposed was refused on the ground of the unreasonable conduct of the plaintiff, in delaying his proceeding; but the court recognise the rule as contained in the English cases. In Smith v. Barker [Case No. 13,013], in the circuit court of the United States, the contract declared on was for building a ship, yet, the declaration was permitted to be amended while the case was before the jury, so as to exhibit the cause of action to be "the finishing of a ship"; Livingston, Justice, declaring that the party might so amend at any stage of the proceedings. In the case of The Harmony [Id. 6,082], Mr. Justice Story observes: That upon examination he did not find that an amendment, introductive of a new cause of action, was objectionable at common law, but that such had been allowed under particular circumstances; and that the fact that the statute of limitations would run against such new cause of action, was a circumstance presenting a strong reason for permitting such amendment. He refused the amendment proposed in that case, not because the court possessed not the discretionary power, but, because the statute of limitations "had run against the recovery of the forfeiture," and by allowing the amendment it would be introductive of a new substantive offense, as the cause of the original information was outlawed. In some of the states there are statutory provisions conferring the right upon parties to amend their pleadings on or before trial, and the courts have no discretion to refuse. Such is the case in Pennsylvania. The statute of 1806, commonly called the "Arbitration Law" of that state, forbids that the plaintiff shall be non-suited for any infor-

mality in any declaration, and confers upon him the right to amend at any time before the cause is committed to the jury. Purd. Dig. 411. In Maryland, amendments may be made before the verdict, so as to bring the matter in controversy between the parties fairly to trial. 4 Griffith, 951. And in Massachusetts, a similar provision exists, by the statute of 1784. These statutory enactments explain the decisions in those states, which would seem to deny the discretionary power of amendment introductive of a new and kindred cause of action. Mr. Justice Tilhman, in 2 Serg. & R. 3, places the decision of the court on the construction of the statute, "the object of which was the attainment of substantial justice, unembarrassed by form," and declares that under its provisions, an entirely new cause of action shall not be introduced under pretence of amendment,—that is, in an action of slander, the plaintiff shall not introduce a new count for trover or malicious prosecution; or, in debt or covenant, he shall not amend by changing his action into assumpsit on promises. But, even under the statute, the party might, as a matter of right, provided he adhered to the original cause of action, add a new count, substantially different from the original declaration. Mr. Justice Duncan, in 8 Serg. & R. 287, likewise confines the decision of the court expressly to the construction of the statute, and, as Ebersoll v. Krug, 5 Bin. 51, and Cunningham v. Day, 2 Serg. & R. 1, had been referred to in the argument, he follows in the path of those cases, and admits the amendment, because it was not the substitution of a new cause of controversy for the original declaration and was therefore one of the cases provided for in the statute. Such was also the case of Shock v. McChesney, 4 Yeates, 507, where, in slander, the court would not permit an amendment adding a new count for a malicious prosecution, such amendments not being within the provisions of the act of 1806 [Laws Pa. 1805–06, p. 563].

The application in these cases was not to the discretion of the court, under peculiar circumstances, showing that great injustice would be done by a refusal, and asking a boon, under the power conferred upon the court by the common law; but the amendments were demanded as matter of right; and it is error in the inferior courts in Pennsylvania to refuse such statutory amendments, so as to make the declaration conform to the evidence which has been introduced on the trial, and this because the statute conferred the right. Hence the courts in that state have, in the cases cited, based their decisions on the strict construction of the state statute, and employed the language used in this motion, "that a new substantive cause of action cannot be introduced by way of amendment." The question was not, as in 5 Bing.: "Will any injustice be done by what is proposed?"

But are we bound by our statute to permit the plaintiff by amendment to institute a new, and an entirely different suit from that set forth in his original declaration? In the same light do I view the cases of Haynes v. Morgan, 3 Mass. 208; Vancleef v. Therasson, 3 Pick. 12; Ball v. Claflin, 5 Pick. 304; Heridia v. Ayres, 12 Pick. 334. But in Gay v. Homer, 13 Pick. 535, the court permitted, in an action for slander, new counts showing other species of slander, than that contained in the original narr., on the principle that the injury complained of affected the plaintiff's reputation, and therefore any new slander might be added, as it was the same cause of action, namely, an injury to plaintiff's reputation, as that contained in the original counts. Both Chief Justice Parsons and Chief Justice Parker in their opinions in the cases cited, give a construction of the statute of Massachusetts, the latter observing in the case in 5 Pick. that "The new count offered under leave to amend, must be consistent with the former counts," (that is) "of kindred character subject to the same plea, and such as might have been originally joined with the others." And such must be the character of the amendment at common law, although Tindal, Chief Justice, in Aylwin v. Todd, allowed the entire change of the pleadings, substituting a different cause and a different form of action, and a different defense, from that on which issue had been originally joined.

From a careful, and I may say a laborious consideration of the cases both in England and in this country, and from a solicitude to avoid, if possible, any innovation upon the settled practice of the courts, I have arrived at the conclusion, that it is competent at common law to amend the declaration by a new count, introductive of a new cause of action, provided such amendment corresponds in character with the original count, is a kindred cause, admitting the same pleading and defense, and might have been included within the declaration originally filed, and especially where such cause is outlawed by the statute. I cannot perceive the injustice to the defendant by an adherence to this principle. The case under consideration illustrated its propriety. The original cause of action was the indebtment of the defendant to the testator of the plaintiff in June, 1841. The evidence of that indebtment consisted in three promissory notes, then given on time. Action is brought on two of them in this court. In the progress of the cause, and before the end of the 2d term, an amended count, declaring on the promissory note, is by leave of the court, superadded to the original declaration, and this, when a distinct suit might have been instituted upon it, as not then precluded by the statute of limitations. Where then is the injustice to the defendant, by not introducing it in this suit? Every legal defense is still open to him.

If it be not his contract, or if it has been paid, or, if time was given to the drawer, or, if he was released in any way by the conduct of the holder, all these circumstances of defense are still available—on the new as on the old counts. His plea of the general issue is not affected by the amendment; it may stand, or he may plead the same de novo, as applicable now to all the notes. Had distinct and separate suits been brought upon the three notes, the court, on application, would have directed their consolidation into one, to prevent accumulation of costs, and because they were of kindred character, between the same parties, for the same indebtment, and admitted of the same pleading. For the promissory note of itself is not the cause of action; it is but the evidence of a promise, and a promise to pay a previous indebtment the failure to fulfil which gives the right to sue. Where then the injustice in allowing the amendment? Is the defendant taken by surprise? if so, the court will see that that circumstance does not impair his defense. Is he deprived of any legitimate defense? No. Does the amendment change the character of the action? No. Wherefore then strike it out? Because, it is argued, it introduces a new substantive cause of action. Suppose it does. It is not adding a count in covenant to a declaration in assumpsit. It is not building trover upon slander, so abhorrent to the judicial taste of Mr. Justice Tilhman, in Cunningham v. Day. It is not, as in Aylwin v. Todd, changing an action of covenant into a quantum meruit for work and labor done, and extinguishing the entire pleading ab initio; it is not, as in Strange, substituting a different promise, or, as in Leving, altering the very foundation of the action; it is not, as in 1 Douglass, adding a count for money had and received to a declaration in debt for the recovery of a penalty for money. It is not a count for a fresh indebtment, accruing since the bringing of the action; but a count on one of the special promises of the defendant to pay the debt existing before the commencement of the suit, the withholding the payment of which debt, is in fact the cause of action, and consequently the new count is in strictness and in truth, not introductive of a new substantive cause of action.

I am not disposed to overturn decisions, although I will not permit even a sacred regard for stare decisis, to lead me to overlook the justice of the case. And when I cannot discover what injustice is done to the defendant, and clearly see that injustice will be done to the plaintiff, by striking out the new count, I cannot, I will not hesitate. "Fiat justitia"—even if the judicial firmament of ages should totter and fall. If the question was exactly such as that raised before the supreme court of the state, I should be inclined to pause, from a just regard to the learning and integrity of that high judicial tribunal. But such is not the case.

There, the attempt was to change an action originally brought to recover a penalty under the statute of usury, into an ordinary common law action for money had and received; there, in the language of Chief Justice Whipple, "the plaintiffs sought to abandon their original cause of action, and substitute another, differing from it in form, substance, and fact." Here, the amendment has not changed either the form of the action, the substance of the controversy, or the character of the facts. All these incidents of suit remain as they were, when the declaration was first exhibited and filed. It was in assumpsit; it continues in assumpsit. Plaintiff declared on promissory notes, —the amount is on a promissory note,— same parties,—and same complaint; the original special counts still remain, and all that is superadded, is another special count of the same character and language as the first, and based upon the same original indebtment. Under these circumstances, therefore, "to strike the amended count from the files" would be doing great injustice to the plaintiff, and permitting the avoidance of a contract on the sole ground of technical exception.

The motion refused.

[See Case No. 14,028.]